Christopher W. Arledge (Bar No. 200767)
Email: carledge@onellp.com
Nathaniel L. Dilger (Bar No. 196203)
Email: ndilger@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorneys for Plaintiff,
THE TIRE HANGER CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TIRE HANGER CORPORATION, a California corporation,<br><br>Plaintiff,<br>v.<br><br>MY CAR GUY CONCIERGE SERVICES, INC., a Canadian corporation, d/b/a HOIST HANGER; RICK DALEY, an individual; BRENDAN DALEY, an individual; PIERCEY NORTH, INC., a California corporation, d/b/a PIERCEY AUTOMOTIVE GROUP; PIERCEY WEST, INC., a California corporation, d/b/a PIERCEY AUTOMOTIVE GROUP; PENSKE AUTOMOTIVE GROUP, INC., a Delaware corporation; LITHIA MOTORS, INC., an Oregon corporation; GROUP 1 AUTOMOTIVE, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF CONTRACT**<br>**(2) PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

For its Complaint against Defendants My Car Guy Concierge Services, Inc. d/b/a Hoist Hanger, Rick Daley, Brendan Daley, Piercey North, Inc. and Piercey West, Inc. d/b/a Piercey Automotive Group, Penske Automotive Group, Inc., Lithia Motors, Inc., Group 1 Automotive, Inc., and DOES 1 through 10, inclusive, Plaintiff The Tire Hanger Corporation alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff The Tire Hanger Corporation ("Tire Hanger") is a California corporation headquartered in Rancho Cucamonga, California.

2. Defendant My Car Guy Concierge Services, Inc. is a Canadian corporation doing business as Hoist Hanger ("Hoist Hanger"). Hoist Hanger is the manufacturer of two tire hanging devices: the Hoist Hanger and the Tire Tree ("the Accused Products"). As detailed further below, the Accused Products infringe at least Plaintiff's U.S. Patent No. 6,604,610 (the "'610 Patent"), U.S. Patent No. 6,681,897 (the "'897 Patent"), and U.S. Patent No. 7,073,778 (the "'778 Patent").

3. Defendant Rick Daley, an individual residing in Canada, is the owner and president of Hoist Hanger. Rick Daley personally directed and participated in Hoist Hanger's acts of direct, contributory, and inducement of infringement, and he did so knowing of Tire Hanger's patents, of Hoist Hanger's obligation to pay license fees to Tire Hanger for use of those patents, of Hoist Hanger's failure to do so, and that Hoist Hanger's continued manufacture and sales of the Hoist Hanger and Tire Tree outside the bounds of the license agreement was patent infringement.

4. Defendant Brendan Daley, an individual residing in Canada, was, from 2013 to 2018, the general manager of Hoist Hanger. Brendan Daley also personally directed and participated in Hoist Hanger's acts of direct, contributory, and inducement of infringement, and he did so knowing of Tire Hanger's patents, of Hoist Hanger's obligation to pay license fees to Tire Hanger, of Hoist Hanger's failure to do so, and that Hoist Hanger's continued manufacture and sales of the

Hoist Hanger and Tire Tree outside the bounds of the license agreement was patent infringement

5.  Defendants Piercey North, Inc. and Piercey West, Inc. (collectively, "Piercey") are California corporations based in Orange County doing business as Piercey Automotive Group. Piercey owns a series of auto dealerships in Southern California.

6.  Defendant Penske Automotive Group, Inc. ("Penske") is a Delaware corporation headquartered in Michigan. Penske owns and operates a large number of auto dealerships throughout the United States, including in this judicial district.

7.  Defendant Lithia Motors, Inc. ("Lithia") is an Oregon corporation headquartered in Oregon. Lithia owns and operates a large number of auto dealerships throughout the United States, including in this judicial district.

8.  Defendant Group 1 Automotive, Inc. ("Group 1") is a Delaware corporation headquartered in Texas. Group 1 owns and operates a large number of auto dealerships throughout the United States, including in this judicial district.

9.  Piercey, Penske, Lithia, and Group 1 all acquire the Accused Products from Hoist Hanger. They then either re-sell those products to their individual dealerships (or the subsidiaries that own and operate them) or they give the Accused Products to their individual dealerships with the intent that the dealerships used the accused devices in their business operations. As such, they are liable for infringement for at least their conduct in using, selling, and offering for sale the Accused Products.

10. On information and belief, DOES 1-10 participated in or ratified the conduct alleged herein. These DOES are unknown at the present time but likely include parent or affiliated companies and executives of the various named defendants.

11. This Court has personal jurisdiction over the defendants, all of whom have done substantial business in the State of California. In addition, Plaintiff

originally sued Defendant Hoist Hanger for patent infringement in this Court in 2014, and that case resulted in a settlement agreement, a true and correct copy of which is attached hereto as Exhibit 1, and a license agreement, a true and correct copy of which is attached hereto as Exhibit 2. The parties to the settlement agreement consented to subject matter jurisdiction, personal jurisdiction, and venue in this Court for any civil action to enforce the terms, covenants, or provisions of the settlement agreement.

12. This Court has subject-matter jurisdiction over the patent-infringement claim under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over the breach-of-contract claim under 28 USC § 1367. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## COMMON ALLEGATIONS

13. The Tire Hanger is the original assignee of three patents, U.S. Patent No. 6,604,610 (the "'610 Patent"), U.S. Patent No. 6,681,897 (the "'897 Patent"), and U.S. Patent No. 7,073,778 (the "'778 Patent"), all of which concern methods and devices for supporting automotive tires.

14. Beginning in or about 2013, Hoist Hanger started manufacturing and selling the Hoist Hanger and, later, the Tire Tree, both of which are devices for hanging an automotive tire from a lift. Representative photographs of these products are included in the charts below.

15. In 2014, The Tire Hanger sued Hoist Hanger for patent infringement related to the sales of those products in this Court in case number 5:14-cv-00549-ODW-MAN. A copy of the First Amended Complaint in that action is attached hereto as Exhibit 3. The parties settled their dispute and entered into the agreements attached hereto as Exhibits 1 and 2.

16. Pursuant to the parties' settlement agreement, all further sales of the Hoist Hanger or Tire Tree would be subject to royalty payments. *See* Exhibit 2 at pp. 2-3.

17. For a few months immediately following the parties' license agreement, Hoist Hanger sent royalty payments to The Tire Hanger. But beginning in about May of 2016, those payments ceased. After providing notice and an opportunity to cure, The Tire Hanger terminated the license agreement because of Hoist Hanger's breach as of December 31, 2016.

18. Despite the termination of the license agreement, Hoist Hanger continued to sell the Hoist Hanger and the Tire Tree. Those sales continue to this day.

19. Pursuant to the parties' license agreement, Plaintiff requested that Hoist Hanger participate in a mediation prior to the filing of this lawsuit. Hoist Hanger refused.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

### (Against Defendant Hoist Hanger)

20. Plaintiff incorporates all allegations from paragraphs 1 through 19 above as if set forth fully herein.

21. The Tire Hanger and Hoist Hanger entered into a binding license agreement dated August 11, 2015. The Tire Hanger performed all of its obligations under the license agreement except for those excused by Hoist Hanger's material breach.

22. Under the license agreement, Hoist Hanger was obligated to pay monthly royalties to The Tire Hanger. For the period between September and December of 2015, Hoist Hanger was obligated to pay a set monthly amount regardless of sales. Beginning in January of 2016, Hoist Hanger was obligated to pay the greater of a monthly flat fee or a per set royalty based on sales. Hoist Hanger breached the obligation to pay royalties.

/ / /

/ / /

23. As a result of Hoist Hanger's breach, The Tire Hanger has been damaged in an amount to be proven at trial but which is believed to be many hundreds of thousands of dollars.

## SECOND CAUSE OF ACTION

### (For Patent Infringement)

### (Against Defendants Hoist Hanger, Rick Daley, Brendan Daley, Piercey, Penske, Lithia, Group 1, and DOES 1-10)

24. Plaintiff incorporates all allegations from paragraphs 1 through 23 above as if set forth fully herein.

25. The Hoist Hanger and Tire Tree products (the "Accused Products") infringe on The Tire Hanger's '610, '897, and '778 patents ("the Asserted Patents). Once The Tire Hanger terminated the license agreement with Hoist Hanger for non-performance, Hoist Hanger no longer had any legal right to sell the Accused Products. Nor did any other person or entity have a legal right to purchase the Accused Products from Hoist Hanger for use or resale.

26. Defendants have been selling the Accused Products, however, and continues to sell them to this day. Defendants have directly infringed the Asserted Patents by their manner of installing and using the Accused Products. Defendants have also contributorily infringed the Asserted Patents because the Accused Products are not a staple article of commerce and has no substantial non-infringing uses.

27. Defendants Rick Daley and Brendan Daley were managing agents of Hoist Hanger during the time that some or all of these sales were made. Both Daleys knew of the litigation and the license agreement that rose out of it; Rick Daley negotiated both on behalf of Hoist Hanger. Both Daleys knew that the license agreement was binding and that Hoist Hanger had no legal right to sell the Accused Products apart from the license agreement. Yet the Daleys made the decision on behalf of Hoist Hanger to stop performing under the license agreement and

thereafter personally directed and participated in Hoist Hanger's infringement of the Asserted Patents following the termination of the license agreement for Hoist Hanger's non-performance.

28. Defendants Piercey, Penske, Lithia, Group 1, and DOES 1-10 have purchased the Accused Products from Hoist Hanger after the termination of the license agreement. These Defendants purchase the Accused Products from Hoist Hanger and either use the Accused Products themselves or resell them to other parties. These Defendants also use the Accused Products in their automotive dealerships and, on information and belief, do so either by re-selling the devices to the individual auto dealerships in their network or by providing the Accused Products to the dealerships and encourage the dealerships to use them. These Defendants are aware that the Accused Products are infringing and that their use and their dealerships' use of the Accused Products is infringing.

29. The Tire Hanger has been damaged and continues to be damaged by Defendants' infringement.

30. The charts below compare the function and operation of the Accused Products against representative claims of the Asserted Patents:

/ / /

/ / /

/ / /

/ / /

**Claim Chart: U.S. Patent No. 6,681,897**

| What is claimed is: | The Accused "Hoist Hanger" and "Tire Tree" Products (collectively "Accused Products") are both wheel hangers mounted on a vehicle hoist and onto which a wheel removed from a vehicle can be temporarily supported during vehicle service/repair. The figures below illustrate exemplary embodiments of the Accused Products.    |
|---|---|
| 1. A method for a human to use to temporarily retain a vehicle wheel during removal and reinstallation of the wheel with respect to the vehicle, comprising in the following order, the steps of: | |
| elevating the vehicle on an automotive hoist so that a support arm disposed on the hoist is at about the same height as a wheel of the vehicle, and the human can remove the wheel without bending over; | As shown in the embodiments depicted herein and as specifically instructed by Defendants, a user installs the Accused Products onto a vehicle hoist and thereafter elevates a vehicle so that a support arm of the Accused Products is about the same height as a wheel of the vehicle. |

| | |
|---|---|
| removing the wheel from the vehicle; | As shown in the embodiments depicted herein and specifically instructed by Defendants, a user of the Accused Products thereafter removes the wheel from the vehicle. |
| Carrying the wheel to the support arm, wherein the human carries an entire weight of the wheel, hanging the wheel on the support arm, wherein the step of hanging the wheel on the support arm consists essentially of guiding a hole in the wheel over the support arm and releasing the wheel; | As shown in the embodiments depicted herein and specifically instructed by Defendants, a user of the Accused Products thereafter places the wheel on the tire support arm on the hoist. This is done by the user carrying the wheel to the support arm and thereafter guiding the support arm through a hole in the wheel. |
| Removing the wheel from the support arm substantially without the human bending over; wherein the step of removing the wheel from the support arm consists essentially of grasping the wheel and pulling the wheel clear of the support art; and reinstalling the wheel onto the vehicle. | As shown in the embodiments depicted herein and specifically instructed by Defendants, a user of the Accused Products after vehicle service removes the wheel from the support arm by grasping the wheel and pulling the wheel free from the support arm and thereafter replaces the wheel onto the vehicle. As shown in the figures above and confirmed by Defendants, this is accomplished substantially without the need to bend over, i.e., the Accused Products are "an automotive tool designed to help technicians remove and re-install automotive wheels and tires |

| | from a standing position. With no need to bend down at the waist to pick up a wheel or tire from the floor – injuries are eliminated." |
|---|---|

### Claim Chart: U.S. Pat. No. 6,604,610

| What is claimed is: | The Accused Hoist Hanger is a wheel hanger mounted on a vehicle hoist arm and onto which a wheel removed from a vehicle can be temporarily supported during vehicle service/repair. The figures below illustrate exemplary embodiments of the Accused Hoist Hanger. The Accused Hoist Hanger is specially designed and specifically instructed by Defendants to be installed on a vehicle hoist. The Accused Hoist Hanger has no substantial non-infringing use other than so-installed on a vehicle hoist. |
|---|---|
| 1. A hoist used in raising and lowering an automotive vehicle, comprising: | |

| | |
|---|---|
| a moving member that raises and lowers along with the raising and lowering of the vehicle; | The vehicle hoist includes a moving cross support (shown in yellow below) that raises and lowers along with the raising and lowering of the vehicle.<br><br> |
| a mount body disposed on the moving member; | The Accused Hoist Hanger includes a mount body, which is shown as a black collar body in the photograph below and as Fig. 20 in the figure below.<br><br> |

| | |
|---|---|
| a hanger extending from the mount body, positioned, sized and dimensioned to receive and support a tire/wheel assembly removed from the vehicle and placed thereon while the vehicle is in a raised position; and | The Accused Hoist Hanger further includes a hanger (Fig. 28 below) extending from the mount body (Fig. 20) that is positioned, sized and dimensioned to receive and support a tire/wheel assembly removed from the vehicle and placed thereon while the vehicle is in a raised position.    |
| a vertical member, and the moving member is substantially perpendicularly cantilevered off the vertical member. | As shown in the photograph below, the Accused Hoist Hanger is installed on a vehicle hoist comprising a yellow moving member perpendicularly cantilevered off a black vertical member (right portion of photo).  |

**Claim Chart: U.S. Pat. No. 7,073,778**

| What is claimed is: | |
|---|---|
| 1. A hoist used in raising and lowering an automotive vehicle, comprising: | The Accused Hoist Hanger is a wheel hanger mounted on a vehicle hoist arm and onto which a wheel removed from a vehicle can be temporarily supported during vehicle service/repair. The figures below illustrate exemplary embodiments of the Accused Hoist Hangers. The Accused Hoist Hanger is specially designed and specifically instructed by Defendants to be installed on a vehicle hoist. The Accused Hoist Hanger has no substantial non-infringing use other than so-installed on a vehicle hoist.    |
| a moving member that raises and lowers along with the raising and lowering of the vehicle; | The vehicle hoist includes a moving cross support (shown in yellow below) that raises and lowers along with the raising and lowering of the vehicle. |

| | | |
|---|---|---|
| | | |
| a mount body disposed on the moving member; and | The Accused Hoist Hanger includes a mount body, which is shown as a black collar body in the photograph below and as Fig. 20 in the figure below. | |
| a hanger extending from the mount body, sized to receive and support a tire/wheel | The Accused Hoist Hanger further includes a hanger (Fig. 28 below) extending from the mount body (Fig. 20) that is positioned, sized | |

| assembly removed from the vehicle and placed thereon. | and dimensioned to receive and support a tire/wheel assembly removed from the vehicle and placed thereon while the vehicle is in a raised position.  |

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Tire Hanger Corporation prays for relief as follows:

1. For compensatory damages on its breach of contract claim;

2. For an order of this Court temporarily, preliminarily, and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from infringing the Asserted Patents;

3. For an award of The Tire Hanger's actual damages from the patent infringement in an amount to be proven at trial;

4. For an award of Plaintiff's lost profits realized as a result of Defendants' infringement of the Asserted Patents;

5. For prejudgment interest;

6. For attorneys' fees;

///

///

///

7. For costs of suit incurred herein; and

8. For all such other and further relief as is just and proper.

Dated:  February 7, 2020            **ONE LLP**

By: /s/ Christopher W. Arledge
    Christopher W. Arledge
    Nathaniel L. Dilger
    Attorneys for Plaintiff,
    The Tire Hanger Corporation

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable under the law.

Dated: February 7, 2020         **ONE LLP**

By: /s/ Christopher W. Arledge
       Christopher W. Arledge
       Nathaniel L. Dilger
       Attorneys for Plaintiff,
       The Tire Hanger Corporation